IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1904.

---

UNITED STATES IRON COMPANY v. SLOSS-SHEFFIELD STEEL AND IRON COMPANY.

Argued February 25, 1904—Decided June 13, 1904.

A contract for the sale of ore, which required shipments to be made at the rate of four hundred tons a day, or ten thousand tons a month, provided that a suspension of delivery, either in whole or in part, should not work a forfeiture if caused by strikes or unavoidable stoppages at the mines or furnaces; and that if the seller should fail to deliver the average amount, monthly, the buyer should have the right to purchase elsewhere and charge the seller any excess paid over the contract price. *Held*, that the failure of the seller to deliver the ore at the specified rate, such failure not being caused by either of the excepted causes, justified the buyer in terminating the contract; *held further*, that the acceptance, by the buyer, of shipments less than the quantity called for by the contract, did not justify the seller in making shipments of less than the contract amount, nor debar the buyer from taking advantage of such action to terminate the contract.

---

On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, GARRISON and SWAYZE.

For the rule, *William D. Edwards.*

*Contra, Frederick J. Faulks.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action is brought to recover damages for breach of contract. By the terms thereof the plaintiff company agreed to ship to the defendant company certain iron ore, containing not less than forty-four per cent. of metallic iron.; the ore to be shipped at the rate of four hundred tons per day, or ten thousand tons per month, from the 1st day of June, 1901, to the 31st day of December, of the same year. It was agreed between the parties that a suspension, either in whole or in part, of deliveries or receipts, was not to work a forfeiture of the contract, provided such suspension was due to strikes, or to unavoidable stoppages at the mines, or at the furnaces, of either party. The parties further agreed that in case of any dispute as to the percentage of metallic iron contained in the ore, the same should be settled by arbitration; and, further, that if the plaintiff company should fail to deliver the average amount of ore monthly specified by the contract, then the defendant company should have the right to buy the ore elsewhere, and to charge to the plaintiff company any excess in cost over and above the price agreed upon in the contract.

During the month of June the plaintiff shipped to the defendant between five and six thousand tons of ore; during the month of July they shipped, approximately, the same amount; during the month of August, nine thousand seven hundred and twenty tons; and during the first three days of September, three hundred and eighty tons. On the 4th day of the latter month the defendant company notified the plaintiff that, on account of its failure to ship ore in the

quantities called for by the contract, and because of the poor quality of the ore shipped, it (the defendant) refused to further execute the contract. Correspondence between the parties, upon the subject of the right of the defendant to terminate the contract, followed this notification; and, on the 24th of September, the defendant, although insisting that it was within its rights in its action of September 4th, agreed to receive shipments again from the plaintiffs, provided they were begun at once, amounted to four hundred tons a day and contained at least forty-four per cent. of metallic iron.

On October 3d the plaintiff again began its shipments. From that time up to the 3d of November, the total amount shipped was four thousand four hundred and seventy-two tons; and, on the latter date, the defendant wrote it a letter, containing, among other things, the following: "We beg to notify you that on account of your failure to comply with your contract with this company we cancel and rescind the contract, and decline to accept any further shipments of ore from you. * * * There has scarcely been a day, since the 1st day of June, 1900, on which you have shipped to this company four hundred tons of ore; certain it is, that during no one month, since the 1st day of June, 1900, have your shipments been anything like ten thousand tons per month. We have written you repeatedly, urging you to comply with this contract, and we cannot further put up with the non-compliance therewith." The plaintiff protested against the cancellation of the contract, denying that it had failed to comply with its terms, and upon the refusal of the defendant to reconsider its action brought this suit.

Upon the trial, a verdict was rendered in favor of the plaintiff for the sum of $2,635.95. Being dissatisfied with this amount, the plaintiff procured this rule, and now seeks to have the verdict set aside upon the ground that it is grossly inadequate.

The parties, by expressly providing in their contract that a failure to deliver or receive the quantity of ore called for thereby, when caused by strikes or unavoidable stoppages at

the mines or furnaces of either party, should not work a forfeiture of the same, clearly indicated that such failure, when not so caused, should warrant the injured party in refusing to further execute the agreement. The provision in the contract that if the plaintiff shall fail to deliver the average amount of ore monthly called for by the agreement, then the defendant company should "have the right to buy the ore elsewhere and charge the excess in cost over and above the contract price to the plaintiffs," does not militate against this view. This latter clause simply confers an additional privilege upon the defendant, and is applicable in case of shortage in delivery, even when caused by strike or by unavoidable stoppages at the mines or furnaces of either party. When the shortage and delivery did not result from one of these specified causes, nor from any cause for the existence of which the defendant was responsible, the defendant, by the provision of the contract, was entitled either to purchase elsewhere or to terminate the contract, at its option. Our examination of the evidence returned with the rule discloses that the shortage in the plaintiff's shipments during the months of June, July, August and September was not due to either of the excepted causes, nor to any failure of performance on the part of the defendants. The same is true with relation to the October shipments. This being so, the defendant was entirely justified in putting an end to the contract on September 4th, and, after its revival on September 24th, in again terminating it on November 3d, unless by its conduct it had lost its right to do so. It is contended that the reception by them of ore shipped, without complaint as to its quantity, was a waiver of its right. It may be that a single shortage could not be taken advantage of by the defendant, after acceptance by it of subsequent shipments of the quantity called for by the contract; but, certainly, the acceptance of shipments below the quantity called for by the contract did not justify the plaintiff in making subsequent shipments of less than the contract amount, nor debar the defendant from taking advantage of such action to terminate the contract—and this is the situation disclosed by the proofs.

It is difficult to perceive upon what basis the jury rested their finding of $2,635.95 in favor of the plaintiff, but this is not a matter with which we need to concern ourselves, as the defendant is not here complaining of that finding. It is enough to say that the amount is not less than the plaintiff was entitled to recover.

The rule to show cause should be discharged.